1

2

3

4

5

6

7

8

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| MAUREEN P. RICHTER, MOLLY RICHTER, and MEGAN MCKEE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RENTON, a municipal corporation, TODD FRAZIER, individually and in his official capacity, KEVIN MILOSEVICH, in his official capacity, AND DOES 1–3, in their official capacity,<br><br>Defendants. | CASE NO. C11-1399-JCC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

18

19

20

21

        This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 11). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

22

## I.      BACKGROUND AND FACTS

23

24

25

26

        Plaintiff Maureen Richter is the owner Pawn Express, a pawn shop located in Kent, Washington. (Dkt. No. 17 at 9). Plaintiffs Molly Richter and Megan McKee are Pawn Express employees. (*Id.* at 4, 17). Plaintiffs claim that the Defendants, police officers in the City of Renton, violated the Plaintiffs' state and federal constitutional rights when the officers (1)

1    obtained and executed a search warrant at the Pawn Express and (2) arrested the Plaintiffs. (Dkt.

2    No. 1 at 19–23). In particular, they allege that Sergeant Todd Frazier obtained a search warrant

3    based on "incomplete, false and misleading information," that he and other officers used

4    excessive force in executing the search, and that the scope of the search exceeded the warrant's

5    authorization. (*Id.* at 11–15). Plaintiffs allege that Renton police officers arrested them without

6    probable cause and that the officers used excessive force in arresting Molly Richter. (*Id.* at 15–

7    17). They also allege that the City of Renton was negligent in failing to properly train and

8    supervise the officers involved in the arrest. (*Id.* at 22). Plaintiffs make a number of related state

9    law tort claims as well. The Court grants the Defendants' motion for summary judgment on most

10   of Plaintiffs' federal claims because the officers are protected from suit by qualified immunity

11   and also grants Defendants' motion with respect to most of the state law claims. The Court

12   denies Defendants' motion with respect to Plaintiffs' state and federal claims regarding the scope

13   of the search.

14        In February 2007, Sergeant Todd Frazier of the Renton police investigated and

15   apprehended Michael Witt, a suspect in numerous theft crimes. (Dkt. No. 12 at 6). Witt had

16   burglarized a home and stolen a snare drum. Witt pawned the drum at Pawn Express for $50.

17   (*Id.*). Sergeant Frazier was able to locate the drum at Pawn Express because the shop had posted

18   the transaction with Mr. Witt in a database that gives law enforcement officers information about

19   property sold to pawn shops. (*Id.*; Dkt. No. 17 at 10). In response to a request from Sergeant

20   Frazier, Pawn Express put a "police hold" on the snare drum in February 2007. (Dkt. No. 17 at

21   10). It appears that the Renton police then forgot about the snare drum. Over a year later Plaintiff

22   McKee emailed Sergeant Frazier and asked whether Pawn Express still needed to hold the snare

23   drum. (Dkt. No. 12 at 10). In email correspondence over the next several days, McKee

24   repeatedly expressed her belief that Pawn Express should be compensated for the $50 it had

25   loaned to Witt on the drum. Sergeant Frazier concluded that McKee was refusing to return the

26   drum, sought a warrant, and led the search that gives rise to Plaintiffs' claims.

II.     **DISCUSSION**

    A.     **The Summary Judgment Standard**

       A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255. Accordingly, the Court recites the facts in the light most favorable to Plaintiffs.

    B.     **Plaintiffs' Fourth Amendment Claims and Qualified Immunity**

       A plaintiff may hold police officers personally liable for violations of the plaintiff's constitutional rights under 42 U.S.C. § 1983. Qualified immunity, however, shields officers from money damages unless the plaintiff "pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all by the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012).

    *1.  The Warrant and Search of Pawn Express*

       The Supreme Court has cautioned against "defining clearly established law at a high level of generality" and has said that the "general proposition" that "an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Al-Kidd*, 131 S. Ct. at 2084. Moreover, when an alleged Fourth Amendment violation "involves a search or seizure pursuant to a search warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 132 S. Ct. at 1244.

The fact that the May 2008 search of Pawn Express was pursuant to a search warrant makes it difficult for Plaintiffs to overcome Defendants' qualified immunity defense. *See id.* Plaintiffs argue, however, that Sergeant Frazier is not entitled to qualified immunity because he knowingly included falsehoods in the affidavit he submitted in support of his warrant application. (Dkt. No. 16 at 4–5). In May 2008, federal law clearly established that an officer who submits an affidavit in support of a search warrant that contains statements that the officer "knew to be false or would have known to be false had he not recklessly disregarded the truth" violates the Fourth Amendment. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002). A plaintiff must make a "substantial showing of deliberate falsehood or reckless disregard for the truth" and establish that but for the dishonesty, the warrant would not have issued. *Id.* (internal quotation marks omitted).  Submitting an affidavit that omits information that is known to the officer and is material to the question of probable cause is also illegal. *Id.* at 1024–26.

Plaintiffs argue that two material statements in Sergeant Frazier's affidavit were false. Sergeant Frazier's affidavit states that: (1) Renton Police Officer James Gould had talked to Megan McKee in reference to another case and that "McKee told [Gould] that Pawn Express would not return the drum from my case, unless they were compensated the monies they loaned to Michael Witt for the drum"; and (2) on May 14, McKee had sent Frazier "another e-mail indicating that [Pawn Express] would not cooperate with my investigation by releasing the property to me."

Sergeant Frazier's assertion that McKee told Officer Gould that Pawn Express would not return the drum was inaccurate. On May 6, 2008, Maureen Richter returned an item of stolen property from another case to Officer Gould. (Dkt. No. 17 at 10). When Maureen[1] asked Officer Gould about the snare drum, he directed her to Sergeant Frazier. (*Id.*). Officer Gould testified

---

[1] The Court will refer to Ms. Maureen Richter as "Maureen" and Ms. Molly Richter as "Molly" in order to distinguish the two of them. The Court does not intend any disrespect to either woman.

1   that he communicated to Sergeant Frazier that there was "a possibility" that Maureen would

2   refuse to turn over the drum without some compensation for the money loaned on it. (Dkt. No.

3   17 at 15). When Officer Gould was asked during his deposition whether Maureen ever told him

4   that "she would not release the drum," he responded "I don't think so." (Dkt. No. 17 at 15).

5   Officer Gould's declaration states that he recalled talking to Sergeant Frazier about Pawn

6   Express and conveying "my opinion that Megan McKee would not return the stolen property."

7   (Dkt. No. 22 at 2).

8          Although it is not material that Sergeant Frazier's affidavit attributed Maureen's

9   comments to McKee, his misrepresentation of what she apparently said is material. Officer

10  Gould's speculation that Pawn Express might be unwilling to return the drum is different than a

11  Pawn Express employee expressly having said she would not return the drum without

12  compensation.

13         The Court agrees with the Defendants, however, that Sergeant Frazier's assertion in the

14  affidavit that McKee sent him emails "indicating" that Pawn Express would not cooperate in

15  returning the drum was not false. After McKee's initial email to Sergeant Frazier regarding the

16  snare drum, the two exchanged additional email messages. McKee's emails to Sergeant Frazier

17  expressed frustration that Pawn Express had not been listed as a victim entitled to restitution

18  when Witt's case was adjudicated. (Dkt. No. 12 at 9–20). On May 6, 2008, Sergeant Frazier

19  emailed McKee stating that Officer Gould had informed him that "Pawn Express does not intend

20  to return the stolen snare drum unless payment is made." (Dkt. No. 12 at 14). He asked McKee to

21  "confirm if this accurately represents the position of Pawn Express?" (*Id.*). He reiterated that the

22  drum was stolen, that the police had no control over restitution, and that the police do not pay for

23  the return of victim's property. (*Id.*) The next day, McKee emailed Sergeant Frazier. She wrote:

24  "We are simply wondering why we were not listed as VICTIMS when this case was brought to

25  trial. We agree Michael Witt should pay for this item, but he was not asked to do so. We asked

26  numerous times to be listed as victims, why weren't we?" (*Id.* at 16). She also stated her

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 5

frustration with the way law enforcement and the judicial system treated Pawn Express, particularly in light of Pawn Express's efforts to facilitate prosecutions. (*Id.*). Sergeant Frazier responded to McKee on May 13. He again expressed regret that she was so upset but then wrote:

> I think anything else I say is going to be misconstrued as threatening, so I will simply reiterate that I plan to come pick the property up, and release it to the item's original owner. To put it bluntly-You are in possession of stolen property. Do you plan on facilitating my request by immediately releasing the drum to me or not? Please provide me with a definitive "yes" or "no" answer by Thursday 15th/1200.

(*Id.* at 20). McKee responded to Sergeant Frazier the next day saying his message seemed to contain threats, again stating Pawn Express's frustration about the lack of compensation and concluding that because he failed to list Pawn Express as a victim, he should personally pay for the oversight. (*Id.* at 18). None of McKee's email messages stated that Pawn Express would return the drum without compensation. It is not false to say that McKee's messages "indicate" that Pawn Express would not cooperate in turning over the drum.

Accepting that the affidavit overstated either what Maureen told Officer Gould or what Officer Gould relayed to Sergeant Frazier about his conversation with a Pawn Express employee, the Court must consider whether that falsehood was deliberate or demonstrated a reckless disregard for the truth. *See Butler*, 281 F.3d at 1024. The Court cannot conclude that it was deliberately false or recklessly disregarded the truth. Whatever Officer Gould told Sergeant Frazier about his conversation with Maureen, Sergeant Frazier believed she said she would not turn over the drum. This belief is evidenced in Sergeant Frazier's May 6 email to McKee: "Ofcr. Gould informed me that he had a conversation with Maureen Richter today, and that Pawn Express does not intend to return the stolen snare drum unless payment is made. Can you please confirm if this accurately represents the position of Pawn Express?" (Dkt. No. 12 at 14). No Pawn Express employee expressly rejected that position.

Sergeant Frazier made a reasonable, although likely mistaken, judgment about the willingness of Pawn Express to cooperate with him. An officer who makes a reasonable mistake

1  is protected by qualified immunity. *See Messerschmidt*, 132 S. Ct. at 1244. The Court questions

2  Sergeant Frazier's decision to escalate this situation by obtaining a search warrant for Pawn

3  Express rather than, for example, simply going to the store and trying to resolve the issue with

4  the staff. But, the Court cannot say that Sergeant Frazier recklessly disregarded the truth or that

5  his actions were so unreasonable that he lost the shield of qualified immunity. Accordingly,

6  Defendants are entitled to summary judgment on Plaintiffs' claims that the warrant was

7  defective.

8          2.   *The Scope of the Search*

9          Plaintiffs allege that Renton police officers exceeded the scope of the warrant when they

10  searched Pawn Express. (Dkt. No. 16 at 12–13). The Fourth Amendment requires that a warrant

11  "particularly" describe the place to be searched and things to be seized. U.S. Const. amend. IV. It

12  was clearly established when the search occurred that the Fourth Amendment forbids "general

13  searches" and "prevents the seizure of one thing under a warrant describing another." *Marron v.*

14  *United States*, 275 U.S. 192, 195–96 (1927). A consensual search, however, is reasonable under

15  the Fourth Amendment when "the consent-giver has authority over the area searched." *United*

16  *States v. Dering*, 9 F.3d 1428, 1429 (9th Cir. 1993), *overruled on other grounds by United States*

17  *v. Kim*, 105 F.3d 1579, 1581–82 (9th Cir. 1997).

18          The warrant at issue authorized search of "Pawn Express, located at 23561 104th AV SE,

19  Kent, WA" and seizure of: "Ludwig snare drum, along with drum carrying case affixed with

20  bumper stickers, which was pawned by Michael Witt on Dec. 30, 2006" and a "[p]hotocopy of

21  original pawn receipt, involving the transaction between Michael Witt and the Pawn Express on

22  Dec. 30, 2006." (Dkt. No. 17 at 32). Officers located the snare drum and pawn receipt

23  approximately fifteen minutes after they arrived at Pawn express, but remained in the store,

24  effectively closing it down, for at least an additional hour. (Dkt. No. 1 at 14; Dkt. No. 17 at 7,

25  11). During that time, Sergeant Frazier sought McKee's consent to the police taking footage of

26  the search from the Pawn Express security cameras. (Dkt. No. 17 at 7, 11). McKee consented

1  after officers threatened to obtain a warrant and "'rip out' the security system." (*Id.*). Maureen

2  told the officers that she was the owner of Pawn Express, that the security footage was not

3  covered by the warrant, and that she refused consent. (*Id.* at 11). The officers continued to seek

4  consent from McKee, the store manager. (*Id.* at 11). Officers other than Sergeant Frazier also

5  continued to search through the store. (*Id.* at 7, 11–13).

6         There are three questions regarding the scope of the search. The first is whether McKee

7  had authority to consent to the search and seizure of the security video footage. Second, if

8  McKee had authority, did she consent voluntarily? The third question is whether Renton police

9  officers continued to search Pawn Express after the premises were secure and the snare drum

10  was recovered.

11        A person who does not own property but has joint access to and control of the property

12  generally has authority to consent to a search. *See Kim*, 105 F.3d at 1585. An employee has

13  authority to consent to a search of property if, at times, the employer cedes total control of the

14  property to the employee. *See id.*; *United States v. Murphy*, 506 F.2d 529, 530 (9th Cir. 1974).

15  Because McKee had joint access and control over the property, McKee had authority to consent

16  to the search of the security footage. Plaintiffs argue that Maureen, the owner of Pawn Express,

17  was the only person with authority to consent to a further search of the premises (Dkt. No. 16 at

18  8) but cite no authority for that proposition. Whether Maureen's statement that she did not

19  consent had any bearing on the validity of McKee's consent is a question on which the Court has

20  been unable to identify any governing authority. As a result, even if Maureen's refusal to consent

21  invalidates McKee's consent to the search of the video footage under the Fourth Amendment,

22  there was no clearly established federal law telling the officers this so they are entitled to

23  qualified immunity on the first question. *See Al-Kidd*, 131 S. Ct. at 2080.

24        The next issue is whether the McKee's consent was freely given. Plaintiffs argue that she

25  only gave her consent in response to Sergeant Frazier's threat to obtain a warrant and "rip out"

26  the security system. The Court determines whether consent to a search was voluntary based on

1  the totality of the circumstances. *See United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th

2  Cir. 2004). There are five factors relevant to this analysis: (1) whether the consent-giver was in

3  custody; (2) whether the officers had their guns drawn; (3) whether Miranda warnings were

4  given (if the person was in custody); (4) whether the consent-giver was notified of her right not

5  to consent; and (5) whether the person was told that a search warrant could be obtained. *See id.* at

6  502. A threat, however, can be a more important circumstance than any of the five factors in a

7  specific case. *Id.* In *Patayan Soriano*, the Ninth Circuit held that threat to take woman's children

8  into custody if it became necessary to arrest her did not undermine voluntariness of her consent

9  to a search because officers explained before she consented that she was not a suspect and

10  probably would not be arrested. *Id.*

11  McKee alleges that it was the officer's threat to take the Pawn Express security system

12  that induced her to consent to giving them the footage of the search. Although loss of the security

13  system would certainly have been an expense for Pawn Express, this threat must be considered

14  less intimidating than the threat to take a person's children. Moreover, it was probably true that if

15  the officers had sought a warrant to obtain the video footage they would have been able to obtain

16  one and would likely have been authorized to take some of the video security equipment as well.

17  McKee was under arrest when Sergeant Frazier asked her to consent to take the surveillance

18  footage, but she had been advised of her Miranda rights and he advised her that she had the right

19  to refuse to consent. (Dkt. No. 17 at 39). Considering the totality of the circumstances, the Court

20  concludes that McKee's consent to the search and seizure of the video footage was valid under

21  the Fourth Amendment. Accordingly, Defendants are entitled to summary judgment on

22  Plaintiffs' federal claims arising from the search and seizure of that footage.

23  The Supreme Court's *Marron* decision clearly established that a search that goes beyond

24  the scope of a warrant is unreasonable and violates the Fourth Amendment. *See also VonderAhe*

25  *v. Howland*, 508 F.2d 364, 366–69 (issuance of "general warrant" and wide ranging search of

26  personal and business records impermissible). Both Maureen and McKee declare that they saw

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 9

1    officers conducting a general search of the business after the officers had recovered the drum.

2    (Dkt. No. 17 at 7, 11–13). There is a genuine issue of material fact as to whether the officers

3    continued to search Pawn Express after they had secured the premises and recovered the snare

4    drum. If a jury concludes that they did, then the officers violated a clearly established

5    constitutional right and would not be entitled to qualified immunity for any damages resulting

6    from that additional search.

7         *3. The Arrests of Plaintiffs*

8         Plaintiffs claim that the officers arrested them without warrants or probable cause, in

9    violation of the Fourth Amendment. The Court concludes that the officers had probable cause to

10   arrest each of the Plaintiffs so the arrests did not violate the Fourth Amendment. "Probable cause

11   to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to

12   lead a person of reasonable caution to believe that an offense has been or is being committed by

13   the person being arrested." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).

14   The officers arrested McKee for possession of stolen property, in this case the snare drum. They

15   arrested Maureen for obstructing an officer after she questioned them about the search warrant

16   and placed her hands in her pockets, which had previously been searched. (*Id.* at 11). They

17   arrested Molly for obstructing an officer because she did not immediately follow their commands

18   when they entered Pawn Express to execute the warrant.

19        A person who knowingly possesses or retains stolen property valued at less than $150,

20   knowing it has been stolen, is guilty of a misdemeanor under Washington law. *See* Wash. Rev.

21   Code §§ 9A.56.140, 9A.56.170. Sergeant Frazier located the stolen snare drum at Pawn Express.

22   (Dkt. No. 17 at 39). He had previously informed McKee that the drum was stolen, (Dkt. No. 12

23   at 20), and reasonably believed that she would not return it. He therefore had probable cause to

24   arrest her for possession of stolen property.

25        The Defendants had probable cause to arrest Molly for obstructing a law enforcement

26   officer in violation of Washington law. *See* Wash. Rev. Code § 9A.76.020 ("A person is guilty of

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 10

1   obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law

2   enforcement officer in the discharge of his or her official powers or duties"). It is evident from

3   the Pawn Express security footage that Molly "willfully hindered, delayed or obstructed" officers

4   by refusing to comply with their instructions and resisting their attempts to restrain her. (*See* Dkt.

5   No. 14). The Defendants also had probable cause to arrest Maureen for obstructing a law

6   enforcement officer. Maureen's declaration acknowledges that the officers executing the search

7   "placed [her] on a nearby stool" and that she "placed [her] hands back into [her] pockets," which

8   had previously been searched, while questioning the officers about the search. (Dkt. No. 17 at

9   11). Officer Bowler's report states that Maureen persisted in standing despite being told to

10  remain seated on the stool and that her body language suggested she might be reaching into her

11  pockets for something with which to hit him. (Dkt. No. 12 at 31). Maureen's declaration does not

12  expressly refute Officer Bowler's assertions so there is no genuine issue of material fact as to

13  whether Officer Bowler had probable cause to arrest Maureen for obstruction. Accordingly,

14  Defendants are entitled to summary judgment on Plaintiffs' federal claims arising out of their

15  arrests.

16          4.  *Excessive Force Claims*

17          Plaintiffs' assertions that the officers used excessive force in executing the warrant and in

18  arresting Molly are also baseless. Police officers have discretion to determine how to reasonably

19  execute a search. *San Jose Charter of Hells Angels v. City of San Jose*, 402 F.3d 962, 974 n.11

20  (9th Cir. 2005). Sergeant Frazier and at least ten other officers dressed in "dark clothing"

21  executed the warrant. (Dkt. No. 17 at 5). The officers' badges were visible and their clothing was

22  marked "Police." (*See* Dkt. No. 14). Both McKee and Molly assert that when the police initially

23  entered Pawn Express, they thought the business was being robbed. (*Id.* at 5, 19). While the

24  Ninth Circuit has recognized claims for excessive force in the execution of a search warrant, it

25  has done so in cases far more extreme than the facts presented here, for example where

26  significant property damage resulted. *See, e.g.*, *Chuman v. Wright*, 76 F.3d 292, 293 (9th Cir.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 11

1996) (more than sixty officers in swat attire stormed a residence and seriously damaged property). The fact that the Renton police used more than ten officers to execute the search warrant on Pawn Express was reasonable in light of Sergeant Frazier's statement that:

> [T]he Renton Police Department had specific information that the Pawn Express owners and/or employees were armed, that there were a number of firearms and knives on the premises and that the very nature of the Pawn Express business made it likely that there may also be armed criminals in the store at the time the warrant was executed.

(Dkt. No. 17 at 50).

Molly was behind the pawn shop counter when the officers entered. (*Id.* at 19). The officers asked for McKee, but when Molly turned to summon McKee from another room, the officers grabbed her. (*Id.*). Molly asserts that she resisted because she believed that the Pawn Express was being robbed. (*Id.*) When she resisted they forcibly pulled her arms behind her back and threatened to taser her. (*Id.*). Molly then complied with officer commands and was arrested for obstructing an officer. (*Id.*). Police officers are permitted to use reasonable force to effect an arrest. To evaluate an excessive force claim, the court first considers "the nature and quality of the alleged intrusion" on an individual's Fourth Amendment rights and then considers "the government interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). The officers used relatively minimal force to restrain Molly and threatened to taser her, but did not do so. The crime at issue, obstructing an officer, is also relatively minor. *Id.* at 444. But because the officers had not yet searched Molly or her immediate surroundings, they did not know whether she posed a threat to their safety and it was reasonable for them to conclude that she may have. Finally, the footage from the Pawn Express security cameras shows that Molly did attempt to pull away from and resist the officers. (*See* Dkt. No. 14). Molly's belief that the officers may have been thieves is not relevant to determining whether they used excessive force.

1   The officers are entitled to summary judgment on Plaintiffs' excessive force claims because they

2   used reasonable force to execute the warrant and restrain and arrest Molly.

3         **C.**    **Plaintiffs' Claims Against the City of Renton and Chief of Police Fail**

4         Plaintiffs seek damages under 42 U.S.C. § 1983 from the City of Renton. (Dkt. No. 1 at

5   23–24). A local government entity cannot be held liable under 42 U.S.C. § 1983, unless a policy,

6   practice, or custom of the entity was the "moving force" behind a violation of constitutional

7   rights. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). To establish

8   liability against a municipality, the plaintiff must prove "(1) that [the plaintiff] possessed a

9   constitutional right of which [sh]he was deprived; (2) that the municipality had a policy; (3) that

10  this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that

11  the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*,

12  654 F.3d 892, 900 (9th Cir. 2011). As discussed in section II.B *supra*, most of the conduct

13  Plaintiffs complain of did violate their constitutional rights. Moreover, Plaintiffs acknowledge

14  that they have no evidence of any policy adopted by the City of Renton which amounts to

15  deliberate indifference to Plaintiffs' constitutional rights. (Dkt. No. 16 at 14). Accordingly, the

16  City is entitled to summary judgment on all federal claims against it.

17        Plaintiffs make a related state law claim that the City of Renton and Police Chief Kevin

18  Milosevich were negligent in their hiring, training and supervision of the Defendant officers.

19  Defendants are entitled to summary judgment on claim XIII. They are correct that the City's

20  admission that the officers were acting within the scope of their employment when they

21  undertook the challenged actions (making the City automatically liable for any negligence by the

22  officers under the doctrine of respondeat superior) renders this claim redundant. *See Gilliam v.*

23  *Dep't of Soc. & Health Servs.*, 950 P.2d 20, 28 (Wash. App. 1998).

24         **D.**    **Plaintiffs' Due Process Claim**

25        Plaintiffs allege violations of their substantive and procedural due process rights. (Dkt.

26  No. 1 at 19). When the basis for a claim under 42 U.S.C. § 1983 is violations of the Fourth

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 13

1    Amendment, the claims should be addressed under Fourth Amendment standards, not more

2    general due process standards. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also*

3    *Armendariz v. Penman*, 75 F.3d 1311, 1325–26 (9th Cir. 1996) (en banc), *overruled on other*

4    *grounds recognized by Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851, 582–

5    83 (9th Cir. 2007). The Court has addressed all of Plaintiffs' federal law claims under the Fourth

6    Amendment as required. Accordingly, Defendants are entitled to summary judgment on

7    Plaintiffs' second cause of action for due process violations.

8            **E.     Plaintiffs' State Law Claims**

9            Plaintiffs allege that their claims under the Fourth Amendment also are actionable under

10   the Washington State Constitution, presumably under Article I, section 7. (Dkt. No. 1 at 19–20).

11   The Washington Supreme Court has declined to recognize a private right of action for

12   constitutional torts under Article I, section 7. *See Reid v. Pierce Cnty.*, 967 P.2d 333, 343 (Wash.

13   1998). Defendants are therefore entitled to summary judgment on Plaintiffs' claims under the

14   Washington State Constitution. Those allegations are found in claims III, V and VI. In their

15   motion for summary judgment, Plaintiffs assert a common law cause of action for violation of

16   their right of privacy. (Dkt. No. 16 at 21). Plaintiffs' complaint does not appear to properly plead

17   such a claim. (*See generally*, Dkt. No 1 at 19–24). Moreover, the facts alleged do not support a

18   claim for invasion of privacy under *Reid*, 967 P.2d at 338.

19           Plaintiffs make a state law claim for malicious prosecution (claim VII). (Dkt. No. 1 at

20   20). Under Washington law, probable cause is a complete defense to an action for malicious

21   prosecution. *Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993). Moreover, one of

22   the elements a plaintiff must prove is that "proceedings terminated on the merits in favor of the

23   plaintiff, or were abandoned." *Id.* The Court's review of the record, as discussed above,

24   demonstrates that the officers had probable cause to arrest the Plaintiffs. In addition, according to

25   the declaration of the Tami Purdue, the prosecuting attorney for the City of Kent, she had

26   probable cause to and did charge Plaintiffs with the misdemeanors for which they were arrested.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 14

(Dkt. No. 23 at 3). Plaintiffs' cases were resolved through "Stipulated Orders of Continuance." (*Id.*). Because Plaintiffs complied with the requirements of the stipulations they negotiated with the city, all charges against them were dismissed at the end of the continuance time period. (*Id.*). The stipulated order of continuance procedure described by Purdue is not an abandonment of proceedings against the Plaintiffs. Accordingly, the Defendants are entitled to summary judgment on claim VII.

Plaintiffs argue that Sergeant Frazier abused judicial process when he lied to obtain to search warrant and "facilitated the arrest of Plaintiffs." (Dkt. No. 16 at 9, 20–21). The essential elements of an abuse of process claim are: "(1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *Sea-Pac Co. v. United Food and Commercial Workers Local Union 44*, 699 P.2d 217, 220 (Wash. 1985). Plaintiffs argue that Sergeant Frazier's motivation in obtaining and executing the search warrant was to "unlawfully impose the Defendants' 'authority' over individuals who had the temerity to question police actions and conduct." Plaintiffs point to no evidence in the record that supports this assertion and the Court has found none. Defendants are entitled to summary judgment on claim VIII.

Plaintiffs make a claim for false arrest under state law. As discussed in Discussion Section II.B.3 *supra*, the officers had probable cause to arrest Plaintiffs and are entitled to summary judgment on claim X.

Plaintiffs allege that the officers assaulted them. (Dkt. No. 1 at 22). Because the officers did not use "unnecessary violence or excessive force" to arrest the Plaintiffs, Defendants are entitled to summary judgment on claim IX. *See Boyles v. City of Kennewick*, 813 P.2d 178, 179 (Wash. App. 1991).

Plaintiff Maureen Richter also alleges that Defendants trespassed on her property when they searched Pawn Express. (Dkt. No. 1 at 21). Officers executing a search warrant can be liable

1   for trespass if they "unnecessarily damage the property while conducting their search," thereby

2   exceeding the privilege to be on the land that is conferred by the warrant. *See Brutsche v. City of*

3   *Kent*, 193 P.3d 110, 119 (Wash. 2008). Maureen has made no allegation that officers did any

4   damage to Pawn Express and the Court has already found that the number of officers used to

5   execute the search was reasonable. The Court is therefore doubtful that she can maintain any

6   claim for trespass under state law. If, however, Maureen can prove that the officers' search of

7   Pawn Express exceeded the scope of the authority conferred by the warrant (*see* Discussion

8   section II.B.2 *supra*) and can prove that damages resulted, she may be able to make out a state

9   law claim for trespass. Defendants' motion for summary judgment is therefore denied with

10  respect to Claim IX. (Dkt. No. 1 at 21).

11          Finally, Plaintiffs claim that the officers were negligent and intentionally inflicted

12  emotional distress on them. Because the Court has concluded that the officers conduct was legal,

13  except to the extent that they searched Pawn Express beyond the scope of the warrant, any tort

14  claim Plaintiffs have against the officers is more properly evaluated as a trespass claim as

15  discussed above. Defendants' motion for summary judgment is granted with respect to claims

16  XII and XIV.

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 16

1    **III.    CONCLUSION**

2        For the foregoing reasons, Defendants' motion for Summary Judgment (Dkt. No. 11) is

3    GRANTED in part and DENIED in part. Defendants are entitled to summary judgment on all of

4    Plaintiffs' claims except the claims that the Defendant officers' search exceeded the warrant's

5    authorization.

6        DATED this 19th day of October 2012.

7

8

9

10

11

12                     John C. Coughenour

13                     UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
PAGE - 17